Ford, J.
On March 3, 1911, the Loomis Realty Company leased the two west ground floor rooms of the Spencerian Building, on Euclid avenue in the city of Cleveland, to the Goodyear Tire & Rubber Company. In addition to the other usual clauses in a lease of this kind, there was the following provision:
“It is agreed that there shall be no sign placed on the building, except in the spaces provided for signs on the Euclid front; and that the party of the second part may desire to have lettering in gold or silver letters on the plate glass window or doors except that the party of the- second part is given the exclusive *434 right to place its own sign on the west side of the building, occupying a space not exceeding forty feet in depth from the front corner of the building and the full height of the building, which wall sign may be illuminated at the expense of the party of the second part should the second party so desire.”
The fair construction of this quotation the court believes is this: In the first.instance it was agreed that there should be no sign placed on the building. The expression, “It is agreed that there shall be no signs placed on the building,” is an agreement in which both parties were interested. The owner was interested in preserving the appearance of the building as a whole, that there should not be placed on the* building unsightly signs for advertising that would destroy the architectural appearance of the building, and that might prove to be detrimental to other occupants. The Goodyear Company had an interest in some degree in the same way, so that the space that it rented should not be rendered less valuable by reason of ostentatious or competitive signs placed close by. This agreement apparently went to the whole building, and is equivalent to establishing that there shall be no signs whatever placed on the building. The first exception is, that “except in the space provided for signs on the Euclid front, and that the party of the second part may desire to have lettering in gold or silver letters on the plate glass window or doors.” That exception seems to limit not only the Goodyear tenants, but every other tenant of the building, to placing signs in gold or silver leaf upon the windows or doors of the Euclid front.
Now comes a further exception, which is as follows: “Except that the party of the second part is given the exclusive right to place its own sign on the west side of the building. ’ ’ If the language of this last exception had stopped at that point, then the Goodyear Company "would have had no limitation whatever as to the size of the sign that it might have placed, under this exclusive right, on the west side of the building. It might have occupied the entire west side of the building. The balance of the language used in this second exception is as follows: “occupying a space not exceeding forty feet in depth from the front corner of the building and the full height of the building." This last language, by fair construction, seems to be, therefore, a *435 limitation, which provides that, instead of occupying the whole' west side of the building, the lessee should only occupy a space forty feet in depth and to the full height of the building. The court concluded, therefore, that the fair construction of this language is, that the lessee was given the exclusive privilege to advertise upon the west wall of the Spencerian Building.
Shortly after the lease was entered into between the Loomis Realty Company and the plaintiff, the Loomis Realty Company entered into a lease with the Goodrich Rubber Company for the lease of a room in the central part of the building and having no relation to either the west wall or the east wall of the building as a whole, or, in other words, it occupied one of the rooms not bounded by any exterior side wall. In connection with this lease, the Loomis Realty Company gave to the Goodrich Company the right to put a sign occupying the middle portion of the west wall fifty feet in length and to the full height of the building. The plaintiff contends that this is a violation of its contract.
The Goodrich people, early in May, set about painting a sign on this last mentioned space, and completed the same between the 1st and 5th of May. The plaintiff brings this action to compel the defendant to dispense with this sign, and asks for a mandatory order to that end from the court.
The Goodrich Company filed an answer in which it says that the plaintiff should be estopped to ask for this action of the court, because, in the first instance, the plaintiff failed to record its lease, and, second, because it stood by knowing or claiming to know that it had the right to the exclusive control of the west side of the building for advertising purposes. The Goodrich Company makes this claim because it says that Mr. Hammerle, who was the sales agent in charge of the plaintiff’s store here, knew from the beginning that such work was going forward. So far as the evidence goes, it appears that Mr. Hammerle was merely the sales agent in charge of the store, his duties being limited to the duty of making sales of plaintiff’s line of goods. It does not appear, that he was familiar' with the terms of the lease; nor does it seem fair that the plaintiff should be held to be such an agent as that notice to him would be notice to the company. The evidence shows, however, that Mr. Hammerle, while *436 not knowing the facts in regard to the terms of the lease, did communicate the fact to his principal at Akron, and that the principal, with promptness, protested to both the realty company and the Goodrich Company.
Upon the whole, the court holds that the plaintiff can not be ' charged with standing by and keeping silent, and thus presenting such a situation as would operate as an estoppel against this plaintiff.
So that brings us back from the time that the sign was painted to the time that the Goodrich Company entered into its contract; and the question arises, whether, at the latter time, the plaintiff did something or failed to do something that misled the Goodrich Company into making a disadvantageous contract.
The Goodrich Company claims that the plaintiff misled it in this, that it did not have its lease recorded; but the court believes there is no virtue in this claim, for the reason that it does not appear from the evidence that the Goodrich Company exercised the diligence of making an examination of the records. In other words, it did not rely upon the state of the record. The purpose of the record, after all, is to give constructive notice; and if the Goodrich Company had actual notice, the state of the record in fact becomes a matter of no importance. The law is conceded to be, I believe, that ‘ ‘ a lease of a part of a building prima facie passes the outer wall adjacent to the rooms or apartment named, as a part of the premises leased; and consequently, the lessee has the exclusive right to the use of such wall for advertising purposes.” The Goodrich Company, at the time it made its contract, knew that the plaintiff was in possession, and knew that, under the law, unless there was a restriction, the plaintiff was entitled to the whole lower half of the west wall for advertising purposes, because its occupation extended the whole depth of the building; and when the Goodrich Company was contracting to occupy the middle portion of the last mentioned space for its sign, it was clearly put upon inquiry. If it had made inquiry, being aroused thereto by such notice, the inquiry would have disclosed the entire terms of plaintiff’s lease, and would have disclosed that plaintiff was entitled to both the lower and the upper half of the west wall in question, if the court’s construction of the language in the lease is sound.
*437 In addition to this notice that the plaintiff was entitled to the whole lower half of the west wall, it saw that plaintiff was. occupying a portion of the upper half, which the court believes was sufficient to put it upon inquiry before consummating its contract with the Loomis Realty Company.
It seems that the Goodrich Company was not misled by the fact that the plaintiff’s lease was not upon record, because it is apparent that the Goodrich Company did not undertake to rely upon it.
It is equally clear, the court may add in passing, from the whole evidence, that the Goodrich Company, instead of relying upon record, or upon appearances, or upon silence, really relied upon the statement and good faith of the representative of the Loomis Realty Company.
It is said, "a most usual application of the doctrine of estoppel in pals arises from the misrepresentation or concealment of material facts on the part of the person to be estopped. It is a definite and well-settled rule of equity, which has been adopted by the courts of law, that where A has, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable neglect, induced B to believe certain facts existed, and B has rightfully acted on this belief, so that he would be injured if A is permitted to deny the existence of such facts, A is conclusively estopped to interpose a denial thereof.”
And again, as to silence:
“As a general rule, an estoppel arises from silence as well as words; but this is only where there is a duty to speak, and the party upon whom the duty rests has an opportunity to speak, and, knowing the circumstances requiring that he speak, keeps silent, or, in other words, where silence amounts to a fraud, actual or constructive."
And again:
“It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the plaintiff claiming to have been influenced by the conduct or declaration of another party, to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; *438 ■and that, where the facts are known to both parties, and both have the same means of ascertaining the truth, there can be no estoppel.”
The court has put out of the way the situation at the time the sign was painted, and is considering ,the situation at the time the contract was made. If the Goodrich Company is not entitled to take any advantage of the fact that the plaintiff’s lease was not recorded, because it did not rely upon an examination of the record, it is difficult to discern anything that the plaintiff could have done, or anything that it was called upon to do, that would have acquainted the Goodrich Company with the situation. The plaintiff did not know that such a contract was being entered into, and therefore, under the circumstances, could not be charged with either culpable negligence, or of misrepresentation, or of maintaining a wrongful silence. It is said:
"Another essential element of estoppel by misrepresentation or silence is that one party should have relied upon the conduct of the other party, and been induced by it to act or to refrain from acting, so that he will be substantially injured if the other party should be allowed to repudiate his action; and this rule applies as well where the conduct of the party estopped consists of silence as where it consists of a positive act.”
Upon the whole proof, the court is convinced that the Goodrich Company relied solely upon the representation of the Loomis Realty Company, and did not rely in any respect upon any acts or any failure to act on the part of the plaintiff.
The court therefore concludes that the defense of estoppel, urged by the defendants in this case, has not been sustained.
The defendant, the Loomis Realty Company, asks for a reformation of the contract, on the ground that there was a mutual. mistake. To support this, Mr. Loomis testifies that the negotiations for the lease were had in the rooms subsequently leased; that half an hour or more was consumed in such negotiations. He says further (see page 20 of the record):
"After.we had talked about the terms of rental to be paid for the store, Mr. Schütz asked me if in the renting of the stores we would give him a privilege of putting a sign on the west wall, for a small sign space on the west wall. I said, ‘Yes we will *439 give you a large space.’ He wanted to know how large. I said, ‘We will give you,’ I thought a moment; I said, ‘We will give you space thirty feet in depth and the full height of the building.’ He' remarked that they would like to have a little longer space for the wording of their sign, and asked if I could make it a little longer than that. I said, ‘Yes, I will give you a third of the building, which will be forty feet.’
“Q. The room which was afterwards occupied by the Goodyear Company? A. Yes. He asked me what, if anything, I was going to do with the rest of the space. I said, ‘I don’t know.’
“Q. Is that substantially all the conversation that was had with reference to the sign space on the wall ? A. I think we had some talk about the second floor, as I remarked it had not been rented yet, but I would run the risk of giving them the exclusive use of the front forty feet, disregarding the renting of the second floor space.”
It is unaccountable and inexplicable how, after such a conversation, a man of Mr. Loomis! intelligence, with his knowledge of words and of their use, and his long business experience, when he repaired to his office to reduce this contract to written form, he could have employed the language found in the lease to express the agreement fairly to be inferred from the testimony last quoted. But this is his testimony, and it stands wholly undenied by Mr. Schiltz. If the court felt that the plaintiff was bound by the failure of Mr. Schiltz to deny this testimony of Mr. Loomis, he would feel that such failure to deny amounted to an admission and would constitute that clear, convincing and overwhelming testimony that is necessary to warrant the reformation of the contract. But is Mr. Schiltz’s failure to thus deny the determining thing? The court thinks not. Mr. Schiltz, it appears from the testimony, was a general sales agent deputed to negotiate for the lease of premises in Cleveland. He had negotiations with the president of the Loomis Realty Company. He represented hit principal,' whose place of business is Akron. Negotiations between these two gentlemen were had about this lease. It is said that the gentlemen, with others, repaired to the office of the Loomis Company, and here Mr. Loomis dictated the lease. The testimony of Mr. Loomis is:
"Q. Did you then sign the lease for the Loomis Realty Company? A. Yes, sir.
*440 ‘ ‘ Q. What did you do then ? A. Mr. Schütz took it with him, took both copies.
‘ ‘ Q. What for ? A. To have them signed at Akron.
“Q. By the officers of the plaintiff? A. Yes, sir.
“Q. The Goodyear Tire & Rubber Company? A. Yes, sir.”
The question is, when did the minds of the parties meet and concur upon the terms of this lease? It would seem that Mr. Loomis, notwithstanding all that had transpired prior to this time, would have had the right to withdraw from the effects of his acts so far. Up to the time that the lease came into the hands of the proper officers of the Goodyear Company, he could probably have withdrawn entirely from the contract. It seems to the court that this contract was not concluded until the Goodyear Company had affixed its signature by its proper officers. It does not appear that Mr. Schütz was authorized to sign a lease, or to enter into a lease for the company. The company, the court believes, would have had the right, upon the receipt thereof from Mr. Schütz, to decline to accept the terms therein expressed. The lease thus coming into the hands of the officers of the Goodyear Company in effect was a proposition for the renting of the property under consideration. The acceptance of that would be expressed by a proper signing and delivery of the lease, either directly or by mail, to the Loomis Company. If the court is not all wrong about this, it can not be claimed that the Goodyear Company, upon the ' examination of this lease by its proper officers and the authorization by those officers to have the same signed, entered into any other contract than that expressed in words in the body of the lease.
The court therefore decides that the defendant, the Loomis Realty Company, is not entitled to have its petition for reformation granted.
Decree in accordance with findings hereinbefore stated.